Eric L. Foster, Esq.*
Eric Lindh Foster Law, LLC
48 Main Street, Unit B
Old Saybrook, CT 06475
Telephone: 203-533-4321
Email: efoster@lindhfoster.com

Christopher J. Reichman, *pro hac vice*
Justin Prato, *pro hac vice*
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorneys for Class and Named Plaintiff
STEWART SMITH

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEWART SMITH, individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>INDEPENDENCE HOLDING COMPANY, a Delaware Corporation,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br><br><br>**Jury Trial Demanded** |

Plaintiff STEWART SMITH ("Plaintiff"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to

- 1 -
Complaint

Plaintiffs and their counsel, which are based on personal knowledge.  Plaintiffs bring this action for injunctive relief and damages against Defendant demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff at all times herein mentioned was a resident of the County of Montgomery, State of Pennsylvania.

2. Defendant INDEPENDENCE HOLDING COMPANY ("IHC GROUP" or "Defendant") is, and at all times herein mentioned was, a Delaware corporation with its principal place of business in Stamford, Connecticut, doing business in throughout the United States of America.

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq.  The U.S. Supreme Court ruled that federal courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441.  *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 132 S.Ct. 740, 753 (2012).

4. At all times herein mentioned each entity or person named herein who is not the Plaintiff was an agent or employee of Defendant.

## NATURE OF THE ACTION

5. Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they had a phone number subscribed to a cellular or wireless tariff and who claim Defendant and/or its agents transmitted a call to said wireless phone number using an automatic telephone dialing system without prior express*

*written consent from the called party at anytime from September 17, 2020 to the present, including up to and through trial.*

6. IHC GROUP is the principal actor in a scheme to sell Medicare Part B insurance plans and other insurance related services, including troubling STDLI plans, though telesolicitations.

7. A House of Representatives report on 'Junk Short Term Health Insurance" has specifically noted misleading advertising practices used by IHC subsidiaries in marketing these types of products before, including prominent use of name brands like Blue Cross to sell "junk" short-term limited duration health insurance products that have nothing to do with Blue Cross.  "Shortchanged: How the Trump Administration's Expansion of Junk Short-Term Health Insurance Plans is Putting Americans at Risk", U.S. House of Representatives Committee on Energy and Commerce, Subcommittee on Health Oversight and Investigations, p. 42 (June 2020) (available at https://degette.house.gov/sites/degette.house.gov/files/STLDI%20Report%2006%2025%2020%20FINAL_.pdf)

8. Similarly, in the telemarking calls at issue here, the representatives did not identify their company affiliation and immediately started talking about "Medicare Part B" "senior care" coverage as if it was an official message rather than a sales solicitation.

9. Luckily the named Plaintiff here was a canny consumer, suspected this attempt to mislead, and knew telemarketing is rarely ever legally done so he asked for an e-mail to confirm each of the calls he got, otherwise this would be a fraud case instead of a simple TCPA case against the illegal telemarketing alone.

10. The first two calls refused to send a confirmatory email, but the last one did and it clearly attempted to sell IHC GROUP insurance services from IHC GROUP 'licensed sales agent'.

11. In each of the calls at issue here the victim heard the telltale pause at the beginning of the call while the auto-dialer connects the call it transmitted to the victim automatically to a live sales representative on the dialer's end.

12. Plaintiff pleads on information and belief that the Defendant's auto-dialers are devices that have the capacity to—and actually do—produce, store and call telephone numbers using a random or sequential number generator meeting the statutory definition of automatic telephone dialing system ("ATDS") within the TCPA.

13. None of the calls mentioned Mr. Smith's name, asked "if this is Mr. Smith", or were in any way specifically aimed to Plaintiff, they were all just general generic pitches intended for whomever might have picked up the phone in what was likely hundreds of thousands if not millions of calls to random numbers.

14. None of the calls introduced the calling company or agent by name.

15. All of the calls involved a "hot transfer" from the frontline telemarketer to the sales agent—who may or may not have been licensed—during the call with no mention of names or company names until Mr. Smith finally received a confirmatory email from "Matthew Fanter" of IHC Group.

16. Thus, the modus operandi is the same for all the calls in this case, a "cold call" to an unsuspecting consumer using an auto-dialer in order to sell the insurance products of IHC GROUP.

17. Defendant has intentionally violated the TCPA in a so-far successful attempt to sell their insurance plans.

**FACTUAL DETAILS RE NAMED PLAINTIFF**

18. Mr. Smith made notes of the three (3) separate IHC GROUP-selling calls he received at or around the time he received them with the date and time of transmission, the Caller ID information and a brief synopsis of the call, which is

attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim as well as reprinted below:

> "On 09/17/20 Auto dialed( said hello several times- pause- you heard a click- live person came on the phone-)from caller ID 267-875-1104- talked to an agent regarding senior care for part B medicare- they transferred him to an agent and they did not send any emails . Client told them if they are not sending an email- He was not interested.
>
> On 10/24/20 Auto dialed( said hello several times- pause- you heard a click- live person came on the phone-)from caller ID 216-279-3969- talked to an agent regarding senior care for part B medicare- they transferred him to an agent and they did not send any emails .  Client told them if they are not sending an email- He was not interested.
>
> On 11-04-20 the caller ID 267-775-6317 -auto dialed ( said hello several times- pause- then a click- live person came on the phone)- talked to several people and then got transferred to an agent for Part B Medicare- email was received."  [sic]

19. Shortly after the last call, as promised, Plaintiff received an email dated November 4, 2020, 9:53 AM EST, leading off with a large IHC GROUP logo and picture and which gave him an IHC GROUP authorization code and stated it was from "licensed sales agent" Matthew Fanter, whose email address ending in "@ihcgroup.com" and direct phone number was at the bottom of the email.

20. A true and correct copy of this email is attached hereto as Exhibit 2 and incorporated herein as if set forth verbatim.

21. Mr. Smith never gave IHC GROUP nor any known affiliate or agent of IHC GROUP express written permission to call him, nor does he have an established business relationship nor personal relationship with IHC GROUP nor any known affiliate or agent of IHC GROUP.

22. The e-mail From address is "Do.Not.Reply@drx.com" but the entire body of the e-mail is IHC content including logo and signature by an internal IHC GROUP licensed sales agent, and as stated in the notes the calls involved multiple 'hot transfers' though no indication of different company involvement like other actual company names was given.

23. To the extent the calls or email involved any third party, Plaintiff alleges that this was never made apparent to him and in fact every effort was made to make it appear to him that he was only dealing with IHC GROUP and nobody else including but not limited to the email body mentioning nobody but IHC GROUP and featuring their logo prominently at the top.

24. To the extent the calls or email involved any third party, Plaintiff pleads on information and belief that IHC GROUP knew or reasonably should have known (implied agency), that these third parties were making the auto-dialed calls to the benefit of IHC GROUP.

25. Alternatively, to the extent the calls or email involved any third party, Plaintiff alleges on information and belief based on appearances presented to him and the fact that internal non-public relationships cannot be known to the public that they were actual agents of IHC GROUP.

26. Alternatively, to the extent the calls or email involved any third party, Plaintiff alleges on information and belief based on appearances presented to him and the fact that internal non-public relationships cannot be known to the public that IHC GROUP knew or should have known that the illegals calls were made afterwards and condoned them by acting or failing to act to stop them.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

27. The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that a sender obtain prior express written consent before autodialing to mobile phones.

28. Defendant has intentionally violated the TCPA in a so-far successful attempt to sell low quality insurance plans for years.

29. Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

30. Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

31. During each of Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendant.

32. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 2% of his monthly phone bills in September, October and November of 2020 since Defendant's calls constituted roughly 2% or more of the total calls to his phone during their junk calling campaign in those three months.

33. Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

34. Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## CLASS ACTION ALLEGATIONS

35. **Description of the Class**: Plaintiffs bring this class action against Defendant for injunctive relief and damages and other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they had a phone number subscribed to a cellular or wireless tariff and who claim Defendant and/or its agents transmitted a call to said wireless phone number using an automatic telephone dialing system without prior express written consent from the called party at anytime from September 17, 2020 to the present, including up to and through trial.*

36. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

37. Plaintiffs reserve the right to modify the Class description and the Class period based on the results of discovery.

38. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant's call records. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

39. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

   a. Whether Defendant transmitted autodialed calls to numbers assigned to cellular telephone services without prior express written consent from the owners of those lines.

   b. Whether the transmission of the calls mentioned in (a), above was done willfully or knowingly by Defendant.

   c. Whether agency relationships giving rise to TCPA liability exist amongst and between IHC GROUP, and any third parties which may have been utilized in making the calls or sending confirmatory emails like that received by the named Plaintiff.

40. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by Defendant's common course of conduct since Defendant has repeatedly called the Class to sell their insurance products.

41. **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with experience in handling complex litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

42. **Superiority of a Class Action**: Plaintiffs and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

43. Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION: TCPA VIOLATION
## AUTODIALED/PRERECORDED CALL TO WIRELESS NUMBERS
### (On Behalf of the entire Plaintiff Class)

44. Plaintiffs reallege all paragraphs above and incorporates them herein by reference.

45. Plaintiffs are bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

46. Subdivision (b) (1) (A) (iii) of Section 227 of Title 47 of the United States Code makes it unlawful for any person to "Make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice...to any telephone number assigned to a paging service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."

47. Plaintiffs allege on information and belief that Defendant uses devices and software to make auto-dialed calls that records and stores the numbers to be called and then calls them without human intervention.

48. Defendant has been calling Plaintiffs' number assigned to a wireless service, using an automatic telephone dialing system or an artificial or prerecorded voice, without Plaintiff's express permission on multiple occasions since September 17, 2020. These calls were not made for any emergency purpose, nor were these calls exempt under subdivision (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

49. Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action for violations of 47 U.S.C. §227 (b) (1) (A) (iii).

Plaintiffs may recover injunctive relief as well as actual damages or $500.00 per violation, whichever is greater. If the court finds that Defendant's violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227;
2. For an award of $1,500.00 for each such violation found to have been willful;

On ALL CAUSES OF ACTION:

3. For attorney's fees pursuant to all applicable federal and state statutes;
4. For costs of suit herein incurred; and
5. For such further relief as the Court deems proper.

DATED: March 2, 2021                                **Eric Lindh Foster Law, LLC**

/s/ Eric Lindh Foster
By: Eric Lindh Foster
**Eric Lindh Foster Law, LLC**
Attorneys for Plaintiff,
Stewart Smith and the putative class

DATED: March 2, 2021                                **PRATO & REICHMAN, APC**

/s/Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff,
Stewart Smith and the putative class